**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARON MARTIN HERR, | : | CIVIL NO. 1:25-cv-01565 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| FRANK BISIGNANO, Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

## I. Introduction.

In this social security action, Plaintiff Sharon Martin Herr ("Herr") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 6-1* to *6-8*.[1] In 2023, Herr protectively filed[2] an application for disability insurance benefits, alleging that she has been disabled since January 21, 2022. *Admin Tr.* 157–59. After her claim at the initial and reconsideration levels of administrative review were denied, Herr requested an administrative hearing. *Id.* at 88–101. On June 26, 2024, Herr—who was represented by counsel—as well as a vocational expert testified at a telephonic hearing before Administrate Law Judge Richard Guida (the "ALJ"). *Id.* at 40–58. At the hearing, Herr amended her alleged onset date of disability to January 12, 2023. *Id.* at 44. On July 16, 2024, the ALJ denied Herr's claim for benefits. *Id.* at 24–35. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On August 22, 2025, Herr, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See doc. 1*. She requests that the court reverse and remand the

---

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Herr's claims.

[2] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

Commissioner's decision under the fourth sentence of 42 U.S.C. § 405(g). *Id.* ¶ 2 (Wherefore Clause). She also seeks "such relief" as the court deems proper, including costs and attorney's fees. *Id.*

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 5*. The Commissioner filed a certified transcript of the administrative proceedings, which constitutes the entirety of his answer. *See doc. 6*. The parties filed briefs (*see docs. 7, 9–10*) and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Herr is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[3]

[3] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Herr met the insured-status requirements through June 30, 2026. *Admin. Tr.* at 24.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision.**

On July 16, 2024, the ALJ denied Herr's claim for benefits. *Admin. Tr.* at 24–35. He proceeded through the five-step sequential-evaluation process.

**A. Step One.**

At step one of the sequential-evaluation process, the ALJ found that Herr had not engaged in substantial gainful activity since her alleged onset date of January 12, 2023. *Id.* at 26.

**B. Step Two.**

At step two of the sequential-evaluation process, the ALJ found that Herr had the following severe impairments: "coronary artery disease, atrial fibrillation, hypertension, osteoarthritis, and obesity."[4] *Id.* The ALJ also found that Herr had several non-severe medically determinable impairments. *Id.* 26–29. As to Herr's mental impairments, the ALJ considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders and in the listings, known as the paragraph B criteria, and he determined that Herr had only mild limitations in each area. *Id.* at 28–29. The ALJ recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." *Id.* at 29. And he asserted the RFC that

[4] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

follows "reflects the degree of limitation" he "has found in the 'paragraph B' mental function analysis." *Id.*

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that Herr did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 29–30. Specifically, the ALJ considered Listings 4.00 and 1.18 in connection with Herr's physical impairments. *Id.* The ALJ also considered Herr's obesity in determining whether her impairments "meet or equal any listing" as required by SSR 19-2p. *Id.* at 30. The ALJ concluded that Herr's "obesity impairment in combination with [her] other medically determinable impairments does not meet or medically equal any listing." *Id.*

**D. The RFC.**

The ALJ then determined that Herr had the RFC to perform less than the full range of light work[5] with some limitations. *Id.* He concluded that Herr "would

[5] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have

have to avoid concentrated exposure to vibration, dangerous machinery, and unprotected heights." *Id.*

In making this RFC assessment, the ALJ considered Herr's testimony and assertions regarding her limitations. *Id.* at 30–31. The ALJ concluded that although Herr's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 31. The ALJ also considered Herr's medical records. *Id.* at 32. And he considered the statements submitted by Herr's husband. *Id.* at 34.

The ALJ further considered the opinions in the record. *Id*. at 32–34. As to Herr's physical impairments, the ALJ considered the opinions of the state agency medical consultants, who completed opinions on April 21, 2023, and October 19, 2023. *Id.* at 33. The opinions indicated that Herr can:

> occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an

---

the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

> eight-hour workday; and must avoid concentrated exposure to vibration and hazards.

*Id.* The ALJ found the opinions persuasive, explaining that the consultants "provided explanatory comments that include references pertaining to the claimant's cardiac and obesity impairments." *Id.* The ALJ also recognized the opinions were consistent with the medical records on a longitudinal basis, including clinical examination findings of a regular heart rate and rhythm, no swelling of the lower extremities, no murmurs, rubs, or gallops, and lungs clear to auscultation." *Id.* The ALJ further noted that the opinions were consistent with the notations within the medical records that indicated "the claimant was . . . stable overall; the claimant denied experiencing shortness of breath and chest pain; the claimant reported her heart rate has been controlled; the claimant was noted to be in no acute distress and well appearing; and the claimant's atrial fibrillation was noted to be rate controlled." *Id.*

Regarding Herr's mental impairments, the ALJ considered the opinion of Stacy Trogner, Psy. D. ("Dr. Trogner"), who indicated:

> the claimant has no limitations pertaining to understanding, remembering, and carrying out simple instructions and the ability to make judgments on simple work related decisions; moderate limitations regarding understanding, remembering, and carrying out complex instructions and the ability to make judgments on complex work related decisions; moderate limitations regarding interacting appropriately with the public, co-workers, and supervisors; and a moderate limitation regarding responding appropriately to usual work situations and

> to changes in a routine work setting. In support of the opinion, Dr. Trogner[] referenced the claimant's "psych. symptoms".

*Id.* at 32–33. The ALJ found Dr. Trogner's opinion not persuasive. He explained that the opinion is "is not consistent with [Dr. Trogner's] own mental status examination findings of appropriate eye contact, normal motor behavior, fluent speech, a coherent thought process, a full range of affect, clear sensorium, intact attention and concentration, mildly impaired recent and remote memory, good insight, and good judgment." *Id.* at 33.

The ALJ also considered—and found persuasive—the opinions of the state agency psychological consultants. On June 22, 2023, a state agency psychological consultant completed a Psychiatric Review Technique ("PRT"). *Id*. at 33–34. The PRT indicated that Herr "has no limitation pertaining to understanding, remembering, or applying information and an overall mild degree of limitation regarding interacting with others, concentrating, persistence, or maintaining pace, and adapting or managing oneself." *Id.* at 33. The ALJ explained that the state agency psychological consultant's opinion "is consistent with the claimant's medical records on a longitudinal basis, including mental status examination findings of appropriate eye contact, normal motor behavior, fluent speech, a coherent thought process, a full range of affect, clear sensorium, intact attention and concentration, mildly impaired recent and remote memory, good insight, and good judgment." *Id.*

On August 31, 2023, a state agency psychological consultant performed a PRT, which indicated "the claimant has a mild limitation pertaining to understanding, remembering, or applying information, interacting with others, concentrating, persistence, or maintaining pace, and adapting or managing oneself." *Id.* The ALJ found the opinion persuasive to the extent the opinion suggests Herr's mental impairments are non-severe. *Id.* at 34. The ALJ further considered—and found persuasive—the opinion of a state agency psychological consultant who indicated that Herr's mental impairments are non-severe. *Id.* The ALJ reasoned that the opinions are "consistent with the claimant's medical records on a longitudinal basis" as indicated above. *Id.* at 33–34.

The ALJ concluded that "the claimant's allegations regarding her symptoms and limitations are not consistent with all of the evidence of record." *Id.* He further noted that "the undersigned has accommodated some degree of the claimant's symptoms related to her severe impairments in her residual functional capacity by limiting the claimant to a range of work at the light exertional level that includes environmental limitations." *Id.*

**E. Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Herr was capable of performing past relevant work as a medical record administrator.

*Id.* at 34. The ALJ went on to state that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at 34–35.

**F. Step Five.**

The ALJ did not perform a step five analysis of the sequential-evaluation process as it was already determined that Herr could perform her past relevant work. *Id.* In sum, the ALJ concluded that Herr was not disabled from January 12, 2023, through the date of his decision on July 16, 2024. *Id.* at 35. Thus, he denied Herr's claim for benefits. *Id.*

**V. Discussion.**

Herr presents two claims. Herr argues that the ALJ erred in his RFC assessment because he failed to account for her mental limitations. *Doc. 7* at 2. She also argues that the ALJ failed to develop the record concerning her knee osteoarthritis. *Id.* Addressing each contention in turn, we conclude that Herr's claims are without merit.

**A. The ALJ's Step Two Findings.**

Herr claims that the ALJ failed to reconcile the mental limitations he found at step two of the sequential-evaluation process with his RFC assessment. The

ALJ, according to Herr, failed to explain why these mental limitations were not included in the RFC. We disagree.

Although an ALJ must consider both severe and non-severe impairments in assessing a claimant's RFC, if an ALJ finds a limitation is minimal or negligible, it is not error to decline to assess a resultant functional limitation. *Holley v. Comm'r Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (finding where claimant had only minor mental impairments, ALJ did not err when RFC included no mental limitations). The ALJ must only explain why the mild limitations in each of the paragraph B criteria do not impact the RFC analysis. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).

Here, the ALJ concluded that Herr suffers from the non-severe mental impairments of depressive disorder, anxiety disorder, and adjustment disorder. *Adim Tr.* at 27. The ALJ found that these impairments cause only mild limitations in interacting with others, in adapting and managing oneself, in understanding, remembering or applying information, and in concentrating, persisting or maintaining pace. *Id.* at 28–29. The ALJ further noted that Herr reported she is able to handle changes in her routine "okay"; reported she "does not have any problems getting along with family, friends, neighbors, or others and that she gets along well with authority figures"; and she "has been assessed with clinical examination findings of appropriate eye contact, fluent speech, good insight, good

judgment, a full range of affect, and adequate expressive and receptive language." *Id.* The ALJ thus concluded that the evidence indicates Herr's mental impairments cause no more than a minimal limitation in her ability to perform basic work activities. *Id.* at 29. He further recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC "assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." *Id.* The ALJ explained that the following RFC "assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.*

Accordingly, the ALJ demonstrated consideration of Herr's mental limitations, which courts within the Third Circuit have held is sufficient to establish that the ALJ considered impairments before formulating the RFC. *See Shaffer v. Colvin*, No. 13-CV-925, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) ("It is clear from the record that the ALJ adequately considered . . . the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding . . . of the limitations that reasonably could be supported by the medical and other relevant evidence."); *see also McCafferty v. Astrue*, No. 07-CV-3641, 2008 WL 1869282, at *4 (E.D. Pa. Apr. 25, 2008) ("Pursuant to the requirement of SSR 96-

8p of a narrative discussion on a function-by-function basis, the ALJ addressed McCafferty's functional limitations by discussing the objective medical evidence, doctors' notes and opinions, McCafferty's daily living activities, and McCafferty's subjective complaints . . . [t]hus, the ALJ followed the dictates of SSR 96-8p.") (internal citations omitted); *see also Long v. Kijakazi*, No. 20-CV-1358, 2022 WL 609620, at *7 (D. Del. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 609160 (D. Del. Feb. 15, 2022) ("These considerations confirm that the ALJ had sound knowledge of the entire record and understood the impact of Mr. Long's mental impairments before determining Mr. Long's RFC.").

Moreover, the ALJ did consider all of Herr's mental impairments when assessing Herr's RFC. *Admin Tr.* at 30–34. In assessing the RFC, the ALJ noted consideration of the entire record and similarly reviewed the persuasiveness of Dr. Trogner's opinion and the opinions of the state agency psychological consultants. *Id.* at 32–34. Courts within the Third Circuit have held that when an ALJ explicitly states that he has considered the entire record when formulating the RFC, he has satisfied the requirement of considering the plaintiff's impairments in formulating the RFC. *See D.C. v. Comm'r of Soc. Sec.*, No. 20-CV-2484, 2021 WL 1851830, at *5 (D.N.J. May 10, 2021) ("[T]he ALJ further explained that his RFC assessment reflects the degree of mental limitations he found at Step 2. Finally, the ALJ noted that in formulating the RFC, he carefully considered the entire

record. This discussion and incorporation by reference is sufficient to satisfy the requirement that the ALJ consider all of the Plaintiff's impairments in formulating the RFC.") (citing *Younge v. Berryhill*, No. 16-CV-5271, 2017 WL 2978758, at *13 (E.D. Pa. May 31, 2017)); *see also Jennifer B. v. Kijakazi*, No. 1:20-CV-20364, 2022 WL 577960, at *12 (D.N.J. Feb. 25, 2022) (finding that the ALJ expressly considered mild mental limitations when crafting the RFC by referencing the limitations he found in the paragraph B mental function analysis).

Based on the ALJ's comprehensive analysis and because he considered all the evidence of the record, the ALJ's RFC assessment is supported by substantial evidence.

**B. The ALJ did not Fail to Develop the Record.**

Herr further argues that the ALJ failed to develop the record concerning her knee osteoarthritis. "Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). "[T]he special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence." *Dobrowolsky v. Califano*, 606 F.2d 403, 406–07 (3d Cir. 1979) (footnote omitted). The ALJ must play an "active role" in this regard. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). He or she has "a duty to develop a full and fair record[,]" and

"must secure relevant information regarding a claimant's entitlement to social security benefits." *Id.* When the claimant is unrepresented, the ALJ must "assume a more active role[.]" *Dobrowolsky*, 606 F.2d at 407. Nevertheless, the duty to develop a full and fair record "applies regardless of whether a claimant is pro se or represented because of the non-adversarial nature of Social Security disability benefit proceedings." *West v. Kijakazi*, No. 3:21-CV-01350, 2023 WL 2742746, at *4 (M.D. Pa. Mar. 31, 2023) (citing *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003)).

The ALJ's duty to develop the record "does not relieve the claimant of her burden of proof[.]" *Guzman v. Berryhill*, No. 3:17-CV-1222, 2018 WL 746385, at *8 (M.D. Pa. Feb. 7, 2018) (citing *Hess v. Sec'y of Health, Ed. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974)). But "[i]f the record is inadequate for proper evaluation of the evidence, the ALJ's duty to develop the record is triggered." *Id.* "Ultimately, the question is whether the administrative record has been adequately developed under the circumstances to provide a substantial basis for the decision." *Id.* (internal quotation marks and citations omitted).

Here, Herr claims that the ALJ failed to develop the record regarding her knee osteoarthritis because the state agency medical consultant noted that "If this is not a fully favorable allowance will need orthopedic notes imaging most affected knee PT notes to assess impairment severity and establish MDI." *Admin. Tr.* at 65,

76. According to Herr, the ALJ should have requested additional orthopedic notes, physical therapy records, and imaging of Herr's knees, and his failure to do so "precluded a proper assessment of her RFC and, by extension, her ability to perform her past work as a medical record administrator." *Doc. 7* at 16. She suggests that if the ALJ had assessed Herr's orthopedic notes, physical therapy records, and imaging of the knees, he may have found that Herr could not perform her past relevant work because of the walking and standing requirements of a medical record administrator. *Id.* n.6. Accordingly, Herr contends that she would have been found disabled if she could not perform her past relevant work. *Id.* at 16.

The Commissioner contends that because Herr was represented by counsel at the hearing before the ALJ, the ALJ did not fail to develop the record. *Doc. 9* at 15–16. The Commissioner relies on a line of cases that state that "'[w]hen an applicant for social security is represented by counsel the [ALJ] is entitled to assume that the applicant is making [her] strongest case for benefits.'" *Id.* (quoting *Glenn v. Sec'y of Health & Hum. Servs.*, 814 F.2d 387, 391 (7th Cir. 1987), and *Myers v. Berryhill*, 373 F. Supp. 3d 528, 539 (M.D. Pa. 2019)). But as noted above, the duty to develop a full and fair record "applies regardless of whether a claimant is pro se or represented because of the non-adversarial nature of Social Security disability benefit proceedings." *West*, 2023 WL 2742746, at *4 (citing *Boone*, 353 F.3d at 208 n.11).

The Commissioner also contends that even if the ALJ erred by failing to develop the record, Herr has not shown prejudice by such error. *Doc. 9* at 16–17. A plaintiff seeking remand for failure to develop the record is required to show prejudice. *Herring v. Colvin*, 181 F. Supp. 3d 258, 268 (M.D. Pa. 2014). And in the instance of an alleged failure to consider additional evidence, a "[p]laintiff must either proffer the evidence, inform the Court as to the content of that evidence, provide a new argument to the Court based on that evidence, or otherwise make a showing of prejudice." *Id.* at 273.

Here, as discussed above, Herr contends that the ALJ's failure to obtain additional evidence of Herr's osteoarthritis of the knees "precluded a proper assessment of [] Herr's RFC and, by extension, her ability to perform her past work as a medical record administrator, which required a significant amount of unencumbered standing and walking." *Doc. 10* at 5. And, according to Herr, she "would have been found disabled at step five if she could not perform her past relevant work." *Id.* However, Herr does not proffer the additional records, inform the Court of their contents, provide a new argument as to the existing evidence, or otherwise address prejudice in sufficient detail. *See Herring*, 181 F. Supp. 3d at 269; *Dietrich v. Saul*, 501 F. Supp. 3d 283, 293 (M.D. Pa. 2020). Rather, Herr essentially argues that remand is required based on procedural defects alone. But "[p]ointing out what the ALJ did not do does not address prejudice. *Herring*, 181

F. Supp. 3d at 269. Accordingly, Herr has failed to show that she suffered prejudice.

**VI. Conclusion.**

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge